UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| AIR LIFT COMPANY, | Case No. 1:20-cv-498 |
| Plaintiff, | Hon. _____ |
| v. | |
| GRAND TRUNK WESTERN RAILROAD COMPANY, | |
| Defendant. | |

_____/

John Byl (P35701)
Scott M. Watson (P70185)
Paul H. Beach (P82036)
WARNER NORCROSS + JUDD LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503-2487
616.752.2000
Attorneys for Plaintiff

# COMPLAINT AND JURY DEMAND

Air Lift Company states its Complaint against Grand Trunk Western Railroad Company as follows:

## PARTIES

1. Plaintiff Air Lift Company ("**Air Lift**") is a Michigan corporation with its principal place of business at 2727 Snow Road, Lansing, MI 48917.

2. Defendant Grand Trunk Western Railroad Company ("**GTW**") is a Michigan corporation with property at 2901 Snow Road, Lansing, Michigan 48917.

## JURISDICTION

3. This Court has federal question jurisdiction over Air Lift's federal claims under 28 U.S.C. § 1331. In addition, this Court has supplemental jurisdiction over Air Lift's state-law claims under 28 U.S.C. § 1367(a), because those claims are closely related to, and form part of the same case and controversy as, the federal claims asserted by Air Lift.

## VENUE

4. Venue is proper in the Western District of Michigan under 28 U.S.C. § 1391(b)(2) in that the properties in question are situated in this District and a substantial portion of the events giving rise to the claims occurred in this District. Venue is also proper in the Western District of Michigan under section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the release and damages occurred in this district.

## FACTS

5. Air Lift leases the property located at 2709 and 2727 Snow Road, Lansing, Michigan 49817 (the "**Air Lift Property**").

6. Air Lift has leased and operated its business at the Air Lift Property at all relevant times for purposes of this Complaint.

7. GTW owns the property at 2901 Snow Road, Lansing, Michigan 48917 (the "**GTW Site**").

8. The GTW Site abuts the southern and eastern portion of the Air Lift Property.

9. GTW is a railroad company, and uses the GTW Site as a railyard by GTW.

10. In 2015, Air Lift installed a new parking lot at the Air Lift Property. The parking lot was installed on the southern portion of the Air Lift Property, north of the GTW Site.

11. Shortly after the parking lot was completed, Air Lift discovered a black, tar-like substance seeping up through the southern portion of the parking lot.

12. Air Lift hired an analyst to determine the makeup of the tar-like substance. The analyst dug several pits in the parking lot and collected samples of the tar-like substance and surrounding soil for testing.

13. Those pits revealed substantial amounts of the tar-like substance below the surface.

14. Analysis of the tar-like substance revealed that it comprises several hazardous substances. Those hazardous substances include, but are not limited to: arsenic, chromium, copper, barium, petroleum compounds, and chemicals with the characteristics of creosote, including but not limited to anthracene, carbazole, dibenzofuran, and phenanthrene.

15. Creosote is commonly used to treat railroad ties.

16. The test pits also revealed that the tar-like substance was mixed with debris. That debris included barrels, railroad ties, a portion of a culvert that matches the culvert on the GTW Site, and, on information and belief, a portion of a railroad switch.

17. On information and belief, GTW was responsible for the activities at the GTW Site that caused or contributed to hazardous substances spilling, leaking, emitting, emptying,

discharging, escaping, leaching, or otherwise being disposed of and coming to be located in the soil on the Air Lift Property.

18. Additional testing has revealed the presence of these hazardous substances elsewhere on the Air Lift Property near the GTW Site.

19. The presence of these hazardous substances elsewhere on the Air Lift Property has prevented Air Lift from undertaking previously planned construction. Air Lift had intended to construct a machine shop on the southern portion of its property nearest the GTW Site before it discovered the presence of hazardous substances on its property. That portion of the Air Lift Property is the only remaining area left available for such a development. However, the hazardous substances that have migrated from the GTW Site have prevented Air Lift from developing that portion of the Air Lift Property.

20. To date, Air Lift has incurred $164,141 in costs to remediate the contamination located under the parking lot at the Air Lift Property.

21. Air Lift received a quote to remediate an area of the Air Lift Property sufficient to allow construction of its previously planned machine shop. The estimated costs exceed $200,000.

22. Air Lift and GTW are parties to a tolling agreement, under which GTW has agreed that the period from May 15, 2019 through the life of the tolling agreement (which ends upon the filing of this Complaint) shall be excluded from any calculation of time made for purposes of determining whether any statute of limitations, statute of repose, or any other defense based on lapse of time has run.

## COUNT I: CERCLA COST RECOVERY

23. Air Lift incorporates and re-alleges all prior allegations as though fully set forth herein.

24. Air Lift is a "person" as defined by section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

25. GTW is a "person" as defined by section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

26. The GTW Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

27. There was an actual or threatened "release" of "hazardous substances" from the GTW Site within the meaning of sections 101(14) and (22) of CERCLA, 42 U.S.C. §§ 9601(14), (22).

28. The tar-like substance noted above contains, among other things, arsenic and chromium, which are hazardous substances.

29. But for the use of hazardous substances by GTW or its tenants at the GTW Site, the Air Lift Property would not be contaminated with hazardous substances and Air Lift would not have incurred or continue to incur response costs.

30. In connection with the release of "hazardous substances" at the GTW Site, Air Lift has incurred and will incur "response costs" within the meaning of section 101(25) of CERCLA, 42 U.S.C. § 9601(25), to remediate the Air Lift Property. These response costs were, and will be, necessary and consistent with the National Contingency Plan.

31. To date, Air Lift has incurred $164,141, associated with excavation, testing, and other remedial measures to implement a CERCLA-quality cleanup responding to the release of hazardous substances from the GTW Site.

32. Air Lift will continue to undertake response actions at the Air Lift Property. The total cost of those necessary future response actions is currently estimated to be approximately $500,000.00.

33. GTW is liable under section 701(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), to Air Lift for the entire amount of Air Lift's past and future response costs.

## COUNT II: PART 201 COST RECOVERY

34. Air Lift incorporates and re-alleges all prior allegations as though fully set forth herein.

35. Air Lift is a "person" within the meaning of Mich. Comp. Laws § 324.20126.

36. GTW is a "person" within the meaning of Mich. Comp. Laws § 324.20126.

37. The GTW Site is a "facility" within the meaning of Mich. Comp. Laws § 301.20101(1)(s).

38. There were and are "releases" and the threat of continuing releases of "hazardous substances" at the GTW Site, within the meaning of Mich. Comp. Laws §§ 324.20101(1)(pp) and 324.20101(1)(x).

39. GTW owned and continues to own the GTW Site at the time of the releases and under the threat of continuing releases of hazardous substances.

40. GTW is a person responsible for activities causing a release of hazardous substances at the GTW Site within the meaning of Mich. Comp. Laws § 324.20126(1)(a). On

information and belief, to the extent that GTW leased the GTW Site at any relevant time, GTW was familiar with the business of its tenants and the purpose of its tenants' use of the property.

41. The hazardous substances released from the GTW Site have migrated to the Air Lift Property.

42. To date, Air Lift has incurred $164,141 associated with excavation, testing, and other remedial measures.

43. Air Lift will continue to work to remediate the contamination that has migrated from the GTW Site to the Air Lift Property. The total cost of those necessary future response actions is currently estimated to be approximately $500,000.00

44. The costs incurred by Air Lift are a direct result of the release or threat of release of hazardous substances from the GTW Site. All response costs incurred by Air Lift were reasonably incurred under the circumstances.

45. GTW is liable, pursuant to Mich. Comp. Laws § 324.20126a(1) to Air Lift for past and future costs of response activities.

## COUNT III: CERCLA CONTRIBUTION

46. Air Lift incorporates and re-alleges all prior allegations as though fully set forth herein.

47. Air Lift is a "person" as defined by section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

48. GTW is a "person" as defined by section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

49. The GTW Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

50. There was an actual or threatened "release" of "hazardous substances" within the meaning of sections 101(14) and (22) of CERCA, 42 U.S.C. §§ 9601(14), (22).

51. The tar-like substance noted above contains, arsenic and chromium, which are hazardous substances.

52. In connection with the release of "hazardous substances" at the GTW Site which have migrated to the Air Lift Property, Air Lift has incurred and will incur "response costs" within the meaning of section 101(25) of CERCLA, 42 U.S.C. § 9601(25), to remediate the Air Lift Property. These response costs were, and will be, necessary and consistent with the National Contingency Plan.

53. Air Lift has incurred costs for the investigation and remediation of the Air Lift Property that is greater than Air Lift's equitable share of those costs.

54. GTW is liable under sections 107(a) and 113(f) of CERCLA, 42 U.S.C. §§ 9607(a), 9613(f), to Air Lift for past and future costs paid by Air Lift in excess of Air Lift's equitable share of such costs.

## COUNT IV: PART 201 CONTRIBUTION

55. Air Lift incorporates and re-alleges all prior allegations as though fully set forth herein.

56. Air Lift is a "person" within the meaning of Mich. Comp. Laws § 324.20126.

57. GTW is a "person" within the meaning of Mich. Comp. Laws § 324.20126.

58. The GTW Site is a "facility" within the meaning of Mich. Comp. Laws § 301.20101(1)(s).

59. There were and are "releases" and the threat of continuing releases of "hazardous substances" at the GTW Site, within the meaning of Mich. Comp. Laws §§ 324.20101(1)(pp) and 324.20101(1)(x).

60. GTW owned and continues to own the GTW Site at the time of the releases and under the threat of continuing releases of hazardous substances.

61. In connection with the releases of the hazardous substances at the GTW Site, Air Lift has incurred and will incur "costs of response activity" within the meaning of Mich. Comp. Laws § 324.20129(3). The costs of response activity were reasonably incurred under the circumstances.

62. Air Lift has incurred and may be ordered to incur costs of response activity associated with remediation of the Air Lift Property, which costs are greater than Air Lift's equitable share of those costs.

63. GTW is liable under Mich. Comp. Laws §§ 324.20124(1) and 20129(3) to Air Lift for past and future costs of response activity paid by Air Lift in excess of Air Lift's equitable share of such losses.

## COUNT V: CERCLA DECLARATORY RELIEF

64. Air Lift incorporates and re-alleges all prior allegations as though fully set forth herein.

65. Air Lift is entitled to a declaratory judgment under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), to be binding in any subsequent action or actions, which holds GTW liable for the entire amount of any future response costs or damages incurred by Air Lift in connection with the release of hazardous substances at the GTW Site.

## COUNT VI: PART 201 DECLARATORY RELIEF

66. Air Lift incorporates and re-alleges all prior allegations as though fully set forth herein.

67. Pursuant to Mich. Comp. Laws §§ 324.20126, 324.20129, and 324.20137(1)(d), Air Lift is entitled to a declaratory judgment, binding on any subsequent action or actions, that holds GTW liable for any further response activity costs or damages incurred by Air Lift in connection with the contamination migrating from the GTW Site.

## COUNT VII: NEGLIGENCE

68. Air Lift incorporates and re-alleges all prior allegations as though fully set forth herein.

69. GTW owed a duty of ordinary care and diligence to Air Lift to handle and dispose of the hazardous substances on the GTW Site in such a manner so as not to significantly harm the environment and adjacent property, including Air Lift and the Air Lift Property.

70. GTW knowingly breached its duty to exercise ordinary care and diligence by failing to properly handle and dispose of the hazardous substances on the GTW Site; and GTW knew, or should have known, that such actions would cause and/or continue to cause the Air Lift Property to be contaminated by those hazardous substances.

71. As a direct and proximate result of GTW's negligence in failing to properly handle and dispose of the hazardous substances on its property, those hazardous substances have contaminated and continue to contaminate the Air Lift Property.

72. As a direct and proximate result of GTW's failure to exercise ordinary care in the handling and disposal of hazardous substances on the GTW Site, the Air Lift Property was and continues to be physically invaded by hazardous substances.

73. As a direct and proximate result of GTW's failure to exercise ordinary care in the handling and disposal of the hazardous substances on the GTW Site, the Air Lift Property was and continues to be significantly contaminated by hazardous substances.

74. On information and belief, to the extent that GTW leased the GTW Site at any relevant time to a tenant who caused or contributed to Air Lift's injury, GTW authorized the injurious acts of its tenant.

## COUNT VIII: NUISANCE

75. Air Lift incorporates and re-alleges all prior allegations as though fully set forth herein.

76. GTW's handling and disposal of hazardous substances at the GTW Site has resulted in the long-lasting, significant contamination of the Air Lift Property, and unreasonably and significantly interfered with Air Lift's use and enjoyment of the Air Lift Property.

77. Air Lift did not consent for hazardous substances to enter, settle, and/or migrate onto the Air Lift Property from the GTW Site.

78. GTW's handling and disposal of hazardous substances on the GTW Site has resulted in Air Lift's inability to freely use the Air Lift Property, which continues to unreasonably and significantly interfere with Air Lift's use and enjoyment of the Air Lift Property.

79. Namely, Air Lift still does not have access to a substantial portion of its parking lot, which limits its parking for employees and customers. Air Lift also has planned to construct a machine shop on the southern portion of the Air Lift Property but cannot currently do so due to the presence of hazardous substances that have migrated on to the Air Lift Property from the GTW Site.

80. On information and belief, to the extent that GTW leased the GTW Site at any relevant time to a tenant who caused or contributed to the nuisance, GTW authorized the nuisance-causing acts of its tenant.

### COUNT IX: TRESPASS

81. Air Lift incorporates and re-alleges all prior allegations as though fully set forth herein.

82. GTW's handling and disposal of hazardous substances caused and will continue to cause those hazardous substances to migrate to the Air Lift Site, including tangible substances such as the tar-like substance seeping through the parking lot at the Air Lift Property.

83. The hazardous substances that entered, settled, and physically invaded the Air Lift Property interfere with Air Lift's interest in the exclusive possession of their properties and constitute a continuing trespass upon the Air Lift Property.

84. Air Lift did not consent for the hazardous substances from the GTW Site to physically invade and/or migrate onto the Air Lift Property.

85. GTW's handling and disposal of hazardous substances, which resulted in the continuing trespass upon the Air Lift Property, was intentional, and was done willfully and with a wanton and reckless disregard for the rights of Air Lift.

86. As a direct and proximate result of GTW's continuing trespass onto the Air Lift Property, Air Lift has sustained the damages described above in Paragraph 50.

87. On information and belief, to the extent that GTW leased the GTW Site at any relevant time to a tenant who caused or contributed to the trespass onto the Air Lift Property, GTW authorized the trespass from its tenant.

WHEREFORE, Air Lift respectfully requests that the Court enter judgment in its favor against GTW as follows:

A. For recovery of all costs of remediation incurred to date, in the amount of $164,141, together with interest, costs, and attorney fees;

B. For all damages that Air Lift has suffered and will suffer as a result of GTW's negligence, nuisance, and trespass against Air Lift in an amount to be proven at trial;

C. For appropriate injunctive relief, including an order requiring GTW to abate the nuisance and to clean, repair, and restore the Air Lift Property and to provide any necessary investigation and response activity at the Air Lift Property;

D. For declaratory relief as alleged herein, including a declaration that GTW is liable for any future response activity costs or damages incurred by Air Lift in connection with the contamination migrating from the GTW Site in an amount to be proven at trial;

E. For reasonable attorneys' fees and costs; and

F. Grant such other legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

Respectfully submitted,

Dated: June 3, 2020

WARNER NORCROSS + JUDD LLP

By s/ Scott M. Watson
John Byl (P35701)
Scott M. Watson (P70185)
Paul H. Beach (P82036)
WARNER NORCROSS + JUDD LLP
1500 Warner Building
150 Ottawa Ave NW
Grand Rapids, Michigan 49503-2487
616.752.2000
Attorneys for Plaintiff

18718641